PH

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| TERESA LEGNO | ) **United States District Court**<br>) **Northern District of Illinois**<br>)<br>) 1:10-cv-02002<br>) Judge John W. Darrah<br>) Magistrate Judge Geraldine Soat Brown |
| PLAINTIFF | |
| v. | |
| NORTHWESTERN UNIVERSITY,<br>AETNA DISABILITY INSURANCE | |
| DEFENDANTS | |

**Complaint of Abuse**
**of Discretion**

FILED
3- 31-10
MAR 3 1 2010

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

COMES NOW the Plaintiff, Teresa M. Legno, and for her complaint under the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*

alleges that Defendants Northwestern University and Aetna Disability refuses to pay Ms. Legno

benefits rightfully owing to her under the Plaintiff's Disability Plan; and in doing so have

violated the ERISA by committing a Heightened Abuse of Discretion and Fiduciaries Abuse.

The Plaintiff further states:

## PARTIES

1. The Plaintiff, Teresa M. Legno is a lifetime resident of the State of Illinois and currently

   lives at 20555 S. Driftwood Drive, Frankfort, Illinois.

2. Ms. Legno was employed and actively worked for the Defendant as a Dental Hygienist.

3. Ms. Legno, age 42, last worked at the Northwestern University School in 1997.

4. The Defendant, Northwestern University provides Long Term Disability benefits through

   a self-insured plan funded by employee and employer contributions that are deposited to

   a trust.  Claims are administered by Aetna Insurance and are paid from the trust.

5.  Ms. Legno was an active participant in the Long Term Disability plan provided by the
    Defendant.

6.  Ms. Legno was forced to cease working as a dental hygienist due to multiple medical
    issues arising from her duties as a dental hygienist. These injuries caused her severe
    pain, lack of movement and the inability to perform simple daily tasks. The conditions
    were diagnosed as:

    a.  cervical spine nerve root inflammation C7 through T12 major pain and neuritis
    b.  radial nerve inflammation major w/a neuritis spasms hand arm major pain into
        neck
    c.  pronator syndrome of rt forearm tendonitis into arm hand causing major pain, loss
        of use hand arm
    d.  Tendonitis of the right thumb into shoulder
    e.  Mid-thoracic myofacitis, major spasms w/a neuritis major pain
    f.  Lumbo-sacral myofacitis w/a neuritis loss of range of motion on F & E making
        movement, walking, sitting, standing impossible
    g.  Cephalic syndrome caused by C spasms and associated neuritis
    h.  Carpal tunnel syndrome

7.  Ms. Legno's pain required her to undergo surgery on her right wrist to correct Carpel
    Tunnel Syndrome. The surgery was unsuccessful and created additional pain and
    complications in her right extremities.

8.  After months of physical therapy and being found unable to return to work, Ms. Legno
    was contacted by Northwestern University and placed on long term disability. Benefits
    were paid from 1998 through December 31, 2008.

9.  Throughout the ten years of benefit payment Unum, Aetna and then Northwestern
    University regularly confirmed Ms. Legno's continued eligibility for benefits by
    reviewing the associated reports from her "regular and appropriate care" by her treating
    physician as required by the disability plan.

10. Northwestern University acquired the services of a physician, Dr. Martin Lanoff, to perform a medical evaluation and provide a conclusion as to her medical condition in 2006 and again in 2008.  However, Dr. Lanoff admittedly did not complete a thorough medical evaluation (as stated in his reports) and, instead submitted his conclusion based on estimates and opinions of other medical reports and examination.

11. Benefits were terminated at the end of 2008 based on the conclusion of Dr. Lanoff's "two independent medical evaluations" dated November 28, 2006 and August 5, 2008.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over the subject matter of this action pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, et seq.  Venue in this Court is proper under ERISA Section 502(a)(2), 29 U.S.C. §1132(e)(2), in that Defendants Unum, Aetna and Northwestern University may be found in this District and the abuse of discretion took place in this District.  Service of process is authorized in any other district where a defendant resides or may be found. ERISA Section 502(a)(2), 29 U.S.C. §1132(e)(2).

## STATEMENT OF FACTS

A.   DISABILITY PLAN REQUIREMENTS & CLAIM

13. Under the long term disability plan, "disability" or "disabled" means:

> A participant will be considered "disabled" under this Plan if the Claims Administrator determines that, due to sickness, pregnancy or injury, he or she is receiving Regular and Appropriate Care from a doctor on a continuing basis, and;
> a. During the first two years of Disability, is continuously mentally or physically unable to perform the Material and Substantial duties of his or her Regular occupation
> b. After two continuous years of disability, the Participant is continually mentally or physically unable to engage in any occupation for which he or

she is or become qualified by education, training or experience, and is not working for wages in any occupation for which he or she is or becomes qualified by education, training or experience.

14. Under the disability plan, specific actions are required by the plan administrator:

In addition to creating rights for plan Participants *ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan.*  The people who operate {the} plan, call *"fiduciaries" of the plan, have a duty to do so prudently and in the interest of {the Plaintiff}* and other plan Participants and beneficiaries.  No one, including {the} employer, {the} union, or any other person, may file or otherwise discriminate against {the Plaintiff} in any way to prevent {the Plaintiff} from obtaining a benefit or exercising {the Plaintiff's} rights under ERISA.

15. Case law establishes that once a claimant has established an entitlement to benefits, as Ms. Legno had already done when Northwestern acknowledged her indicated restrictions and limitations were supported, absent an improvement in her condition, the propriety of the decision to terminate benefits is questionable.  *See McOsker v. Paul Revere Life Insurance C.,* 279 F.3d 586 (8th Cir. 2002); *Nickola v. CAN Group Assurance Co.,* 2005 U.S. Dist.LEXIS 16219 (N.D.Ill. 2005).

B.    MEDICAL EVIDENCE

16. Ms. Legno received medical care from Dr. Gaylen J. Bohlin, her treating physician, on several occasions weekly after her injury and failed surgery in 1997.  Since her referral, Dr. Bohlin provided medical examinations and treatment on an average of three times per week for the last ten years.  To date, Ms. Legno has been examined and/or treated over 400 times by Dr. Bohlin.

17. Dr. Bohlin followed-up the medical care by providing Northwestern University with his medical examination reports as requested.  Dr. Bohlin's reports consistently showed continued and increased pain, inflammation, tendonitis, spasms and reduced range of

motion.  Dr. Bohlin recently described Ms. Legno's condition as "acute exacerbation of a

chronic condition".  Dr. Bohlin also recertified Ms. Legno as totally "disabled" on several

occasions.

18. Dr. Bohlin has consistently noted Ms. Legno's limitations and on February 12, 2009

summarized Ms. Legno's "chronic disorders" as follows:

   a.  Cervical spine nerve root inflammation C7 through T12 major pain and neuritis
   b.  Radial nerve inflammation major w/a neuritis spasms hand arm major pain into
       neck
   c.  Pronator syndrome of rt forearm tendonitis into arm hand causing major pain, loss
       of use hand arm
   d.  Tendonitis of the right thumb into shoulder
   e.  Mid-thoracic myofacitis, major spasms w/a neuritis major pain
   f.  Lumbo-sacral myofacitis w/a neuritis loss of range of motion on F & E making
       movement, walking, sitting, standing impossible
   g.  Cephalic syndrome caused by C spasms and associated neuritis
   h.  Carpal tunnel syndrome

19. On February 12, 2009, Dr. Bohlin again certified Ms. Legno's condition based on more

than ten years of treatment.  He concluded that Ms. Legno "cannot function in any

occupation or job related employment due to her many health problems".

20. The evidence establishes that Ms. Legno remains disabled under the foregoing definition

due to her inability to perform repetitive and grasping motions; she remains unable to

perform the duties of her own or any occupation under the terms of the Plan.

## C.    INDEPENDENT MEDICAL EXAMINATION

21. Northwestern University retained Dr. Martin Lanoff to examine and determine the extent

of Ms. Legno's disability in which he examined her on November 28, 2006 and again on

August 5, 2008.  On both occasions, Dr. Lanoff briefly (in less than five minutes)

examined Ms. Legno and then proceeded to dictate a rather extensive report.  In both of

Dr. Lanoff's conclusions, he discounted diagnosis from other care providers - at points

committing they were "ridiculous" and "silly". In his words, he stated that "he did not

see any disability in this woman whatsoever" and at one point commented that her

physical pain might be "psychosocial".

22. In both reports, Dr. Lanoff expressed that Ms. Legno was able to return to work even

though his examinations were brief, lasting less than five minutes and not containing any

supporting medical tests (such as an MRI, CT Scan, X-ray, etc). After a careful review of

Dr. Lanoff's two reports, the following problems were found:

   a. In the report dated August 5, 2008, Dr. Lanoff indicates that his conclusions are

      not based on review of any medical evidence dated after his report in 2006 –

      which after reviewing the 2006 report, we find his conclusions from that report

      were based on doctor reports previously submitted in 1997 and 1998. In all, Dr.

      Lanoff fails to specifically mention "any" tests that he actually performed on, or

      ordered for Ms. Legno in 2006 or 2008.

   b. Dr. Lanoff's reports are inconsistent with Ms. Legno's medical history as

      evidenced by the medical records in the claim file. Namely, Dr. Lanoff

      acknowledged Ms. Legno's pain on various occasions, but later, summarily

      dismissed them. In his report, Dr. Lanoff cited a lack of "medical explanation for

      her ongoing symptoms". As in *Moody*, reliance on ***objective evidence*** can be

      problematic for medical conditions that may or not be amenable to such

      verification. Citing, *Mitchell v. Metropolitan Life Ins. Co.,* 523 F. Supp. 2d 1132,

      1146 (C.D. Cal 2007). In all, Dr. Lanoff fails to find a "medical explanation" for

Ms. Legno's pain even though Dr. Bohlin and other medical physicians accurately diagnose her condition.

c.   Dr. Lanoff evidences a failure to communicate with Ms. Legno or question her regarding her continued treatment as he writes, "she is not active in treatment now that I can tell." The statement has no bearing on Ms. Legno's capacity for work or her medical conditions. Furthermore, Ms. Legno has constantly received medical treatment from Dr. Bohlin and other referred healthcare providers since 1998 which is documented in Ms. Legno's claim file.

d.   Furthermore, Dr. Lanoff entirely dismisses Ms. Legno's condition in his assessment that she was capable of full-time occupational functionality. Dr. Lanoff did not render a professional medical opinion as he did not adequately review the relevant medical evidence, perform his own tests or take into consideration all factors affecting Ms. Legno's functionality.

e.   Dr. Lanoff, with no experience or professional assessment of Ms. Legno's psychiatric state, raises the question that he is "unclear if there are psychosocial or other issues involved". Throughout both reports, Dr. Lanoff summarily and with no basis, seems to be unclear as to what diagnosis is credible; so therefore he chose to discount what Ms. Legno said to him in addition to any evidence that would support the conclusions that Ms. Legno's treating physicians have made since 1996.

f.   Dr. Lanoff breached professional obligations by ignoring the substantial findings of Ms. Legno's treating physician, Dr. Bohlin. Dr. Bohlin has consistently assessed Ms. Legno's conditions as disabling and his opinions are further

supported by longitudinal treatment history, repeated physical examinations, and

individual assessments of her pain. Similarly, the medical records of her

symptoms are corroborated by Dr. Sweeney's independent evaluation.

### D.   DUTY TO PROVIDE A FULL AND FAIR REVIEW

23. Although there is no treating physician presumption under the ERISA law, "Plan

administrators, of course may not arbitrarily refuse to credit a claimant's reliable

evidence, including the opinions of a treating physician." See *Black & Decker Disability*

*Plan v. Nord*, 538 U.S. 822, 834 (2003). Similarly, the Seventh Circuit, while rejecting

the treating physician presumption, stated:

> If the incentives of the treating physician and of the plan's consultant are
> assumed to be equal and opposite, consideration of incentives drops out and the
> superior information, likely to be possessed by the treating physician, especially
> when as in this case *the consultant does not bother to examine the patient*, may
> support the treating physician presumption after all. *Hawkins v. First Union*
> *Corp.*, 326 F. 3d 914, 917 (7th Cir. 2003).

24. Northwestern University chose Dr. Lanoff to "examine" Ms. Legno (although we have no

detailed information as to what the "examinations" entailed). However, it is important to

recognize that relying on Dr. Lanoff's conclusion is questionable at best since Dr. Lanoff

has *six complaints on file with the Illinois Department of Professional Regulation and*

*in a previous court case was referred to as a "hired gun"*).

    a.  Misdiagnosis – 1/9/1997 – Complaint # 199810771
    b.  Perjury in Court – 6/16/1999 – Complaint # 199904279
    c.  Falsified Medical Info – 12/18/2001 – Complaint # 200108967
    d.  Unprofessional Conduct – 1/22/2001 – Complaint # 2002000536
    e.  Perjury – 2/28/2002 – Complaint # 200201630
    f.  Wrongful Death – 1997 – Complaint # 97L09418

25. Dr. Lanoff failed to discuss the Plaintiff's condition with her treating physician and went too far as to bravely conclude that Ms. Legno has "no disability issues whatsoever".  Dr. Lanoff's conclusion is *absurd and contradictory* to Ms. Legno's medical history, treatment notes, and combination of impairments.  Dr. Lanoff's IME report clearly demonstrates a lack of understanding and failure to consider all of the medial evidence, the combined effects of Ms. Legno's impairments on her functional capacity, or the affect that her continued and persistent pain has on her.

26. Likewise, Dr. Lanoff's conclusory findings are insufficient.  Dr. Lanoff and Northwestern University have clearly failed to consider the functional limitations resulting from Ms. Legno's pain and her inability to grasp objects or perform repetitive motions, even in the absence of a specific etiology for all of the continued disabling impairments.  See, *Gaylor v. John Hancock*, 112 F.3d 460 (10th Cir. 1997) (*precise etiology of disabling condition need not be established so long as insured submits medical evidence of restrictions and limitations.  An insurer must consider subjective complaints if they are reasonably related to an objectively established condition*.  See, e.g., *Leger v. Tribune*, 557 F .3d 823 (7th Cir. 2009)(criticizing insurer for disregarding pain complaints and complete medical record); *Hawkins v. First Union*, 326 F. 3d 914 (7th Cir. 2003)(same);  *Rudzinski  v. Metropolitan Life Ins. Co.*, 2007 U.S. Dist. LEXIS 69258 (N.D.Ill. 9/14/2007); and *Crespo v. Unum*, 294 F. Supp. 2d 980 (N.D. Ill. 2003).  In *Rudzinski and Crespo*, insurers were held to have acted arbitrarily by ignoring the Plaintiff's symptoms of pain.

27. Likewise, in this case, since Ms. Legno's condition has been objectively established by clinical examination, Northwestern University *had a duty to consider all of her*

*subjective complaints of pain in conjunction with the clinical evidence and observations of her treating physicians.*  She repeatedly described her aching discomfort and inability to handle activities of daily living on her own.  Those complaints only strengthen the conclusions of her treating doctors, and had Northwestern University given the doctor's conclusions appropriate weight, it would not have terminated Ms. Legno's benefits.  The record in this case is consistent in establishing Ms. Legno's pain.  There is no "inappropriate" illness behavior noted by any of her treating physicians.

28. At best, Ms. Legno has brief periods of time when she enjoys some level of reduced pain and increased functionality.  Minimal capacity for work in a tolerable fashion, however, does not mean an ability to do the material duties of one's own or any other occupation.  "Qualification for employment requires an ability to work effectively and to be reliable" *Peterson v. Federal Express Corp. Long Term Disability Plan*, 2007 U.S.Dist. LEXIS 41590 (D. Ariz. 6/4/2007), *103-*104.  Based on Ms. Legno's impairments and continued pain, she cannot return to work in any occupation.

## E.        INITIAL APPEAL OF DECISION

29. Ms Legno complied with the ERISA requirements by submitting timely appeals to Northwestern University, both of which were denied.

30. Ms. Legno has exhausted any applicable administrative review procedures and the Defendant's decision to discontinue paying benefits is both erroneous and unreasonable.

31. Ms. Legno requested copies of documents related to her case as outlined and required by the ERISA, of which she has not received.

32. In making its determination, Northwestern University disregarded its responsibility to Ms. Legno by accepting a non-credible, unsubstantiated report from a doctor that failed to describe any test he performed (standard medical procedure) and did not have any explanation as to the source of Ms. Legno's continuous pain, worsening of her symptoms, the implications of failed surgery, or the persistent incapacity to grasp or lift objects.

33. In rendering its decision on Ms. Legno's appeal, Northwestern University employed the services of two more doctors to review Ms. Legno's file. The base majority of the two doctor's report relied almost solely on the conclusions of Dr. Lanoff. At no time did either review doctor contact Ms. Legno's treating physician to discuss her case, condition or diagnosis.

34. Northwestern University cannot justify a determination in reliance on Dr. Lanoff's opinion which is contrary to the evidence in the medical record. Even if Northwestern was not aware of Dr. Lanoff's questionable past record, it should have been able to ascertain the reports from Dr. Lanoff had no basis of medical findings whatsoever.

35. Northwestern University did not afford Ms. Legno a "full and fair" review by retaining Dr. Martin Lanoff, and exclusively relying on his opinion to make a benefit determination for the following reasons:

    a.  The reports are inconsistent with Ms. Legno's medical history as evidenced by the medical records in the claim file.

    b.  Dr. Lanoff indicates that his conclusions are not based on review of any medical evidence or true medical "tests".

    c.  Dr. Lanoff evidences a failure of communication with Ms. Legno as he writes, "she is not active in treatment now that I can tell."

    d.  Dr. Lanoff failed to conclude any true medical basis on Ms. Legno's continuous condition and gives no conclusion as to why it lasted ten years.

    e.  Dr. Lanoff disregarded medical reports and diagnosis from other treating physicians all the while relying on his own cloudy conclusions while rendering final judgment on Ms. Legno

    f.  Dr. Lanoff made references to tests ordered by Dr. Bohlin. In his comments, he made "assumptions" to the results and then admitted not even having seen the test results.

36. By failing to give consideration to Ms. Legno's subjective complaints, Northwestern committed a harmful error in denying benefits. The federal courts have made it clear that "pain alone can be disabling, even when its existence is unsupported by objective evidence". *Diaz v. Prudential Ins. Co. of America*, 499 F. 3d 640 (7th Cir. 2007), citing *Carradine v. Barnhart*, 360 F. 3d 751, 753 (7th Cir. 2004).

37. While every disability case is unique, the Supreme Court made it clear that when an insurer or plan in this case is adjusting a disability claim brought pursuant to the ERISA law, the insurer or plan in this case is adjudicating a disability claim brought pursuant to the ERISA law, the insurer owes fiduciary obligations to the claimant, including the duty to apply "higher-than-marketplace quality standards". *Metro. Life Ins.CO v. Glenn*, 128 S. Ct. at 2350. An insurance company's obligation as an ERISA fiduciary requires more than combining the record for the evidence in its favor and abandoning its review upon discovering more than a scintilla of such evidence; the insurance company was required to evaluate the available evidence in its entirety before reaching a determination,.

*Willcox v. Liberty Life Assurance Company of Boston*, 552 F. .3d 693, 702 (8th Cir. 1/12/09).

38. Northwestern University acted irresponsibly in reviewing Ms. Legno's medical condition and disability claim by retaining Dr. Martin Lanoff, who has six serious professional complaints filed with the Illinois Department of Professional Regulation and has been alleged as a "hired gun" in previous court cases.

39. In addition to the lack of medical proof as stated above, it is questionable if Northwestern ever intended to continue allowing Ms. Legno to receive benefits. It is evident, as shown in two letters "accidently" sent from Northwestern University dated December 12, 2008, that Northwestern had premeditated cancellation of said benefits when it sent a letter regarding an impending appeal on the same day it sent a denial of said appeal.

40. In addition to the failure to obtain an objectionable report, it is also submitted to the Court that Northwestern University has a pecuniary interest which creates a conflict of interest which is assumed when a plan is "self-insured". Since the funds from this plan are placed in trust, the plan administrator or "fiduciaries" have a direct conflict of interest in that a financial interest is at stake.

## CAUSES OF ACTION

*Count I.*

*ERISA (Claim for Benefits Owed under Plan)*

41. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

42. At all times relevant to this action, Ms. Legno was a participant of the Plan within the meaning of 29 U.S. C. §1002(7), and was eligible to receive long term disability benefits under the Plan.

43. The conduct of Northwestern and its failure, denial and refusal to pay Ms. Legno benefits under the Plan for the period from at least on or about December 2008 through the present constitutes a breach of its obligations under the Plan and ERISA.  Northwestern's decision to discontinue paying benefits to Ms. Legno constitutes an abuse of discretion and abuse of its Fiduciaries Duties; as its decision was not reasonable and was not based on substantial evidence.

44. Ms. Legno brings this action to recover long term benefits due and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

*Count II.*

*ERISA (Breach of Fiduciary Duty)*

45. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

46. To the extent that Northwestern is found to be an ERISA plan administrator or fiduciary, or some other ERISA entity, it owed a duty to represent the interests of Ms. Legno, a participant in the ERISA plan.  Northwestern breached said duty by discontinuing payment of benefits to Ms. Legno and by doing so put its financial interests ahead of Ms. Legno's interest.

*Count III.*

*ERISA (Equitable Relief)*

47. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

48. Ms. Legno seeks equitable relief to the extent that she is entitled to such under ERISA's catch all provision.

## PRAYER FOR RELIEF

49. WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

50. Declare that Northwestern University did not act in the best interest of its employee Ms. Teresa Legno in denying her continued disability benefits.

51. Declare a just and fair settlement for Ms. Legno including payment of "past" wages and interest due since Ms. Legno was denied benefits in 2008.

52. Declare a just and fair settlement for Ms. Legno including payment of "future" wages due to Ms. Legno as required by the plan.

53. Declare and Order reimbursement to Ms. Legno for the Defendants failure to provide copies of documents she requested after the final appeal denial and in accordance with the Plan.

54. Order such other equitable and remedial relief as the Court deems appropriate, and award attorneys' fees and expenses.

55. Order reinstatement of insurance and retirement benefits as previous edibility allowed until Plaintiff reaches age 65.

Respectfully submitted this 31st day of March, 2010.


_Teresa M. Legno_
Teresa M. Legno, Pro Se

Pain Control Ltd
416 Dixie Hwy
ChgoHts, Ill 60411

Feb 12, 2009

Re: Teresa Legno, Total disability

To whom it may concern:

This clinic has treated Teresa Legno since June 10, 1997 under a total disability basis.  The
chronic disorders number many  problems and they aill be stated below

1. Cervical spinal nerveroot inflmation C7 thru T12 major pain and neuritis
2. Radial nerve inflmation major w/a neuritis spasms hand arm major pain into neck
3. pronator syndrome of rt forearm tendonitis into arm hand causing major pain, lost of use
   hand arm
4. tendonitis of right thumb into shoulder
5. Mid-throasic myofacitis, major spasms w/a neuritis major pain
6. Lumbo-sacral myofacitis w/a neuritis loss of ROM & F&E making movement, walking
   sitting, standing impossible.
7. Cephalic syndrome caused by C Spasms and associated neuritis
8. Carpel tunnel syndrome

It is this offices opinion she cannot function in any occupation or job releated employment due
to her many health problems.

Very truly yours,

G. J. Bohlin
Pain Control Ltd

Pamela S. Beemer
Office of Human Resources
Northwestern University
720 University Place
Evanston, IL 60208

October 27, 2009

~At this time, I would like to request copies of all documents, records, and any other information relevant to my long term disability claim.  Please send them to:

Teresa Legno
20555 S. Driftwood Drive
Frankfort, IL. 60423

Teresa Legno